IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ECPI UNIVERSITY, LLC,
      Plaintiff,

v.                                          Civil Action No. 3:19-cv-323

MEDICAL CAREER INSTITUTE, INC.,
      Defendant.

## OPINION

ECPI University, LLC ("ECPI"), operates private, for-profit educational institutes online and in several states. It owns the federal trademark "Medical Careers Institute" ("ECPI's mark"). Medical Career Institute, Inc. ("MCI") is a New Jersey corporation offering professional health care training services. MCI uses the mark "Medical Career Institute" ("MCI's mark") to advertise and promote its goods and services.

ECPI has sued MCI, alleging violations of the Lanham Act due to MCI's mark. MCI has moved to dismiss for lack of personal jurisdiction or improper venue, or in the alternative, to transfer this action to the District of New Jersey. Because the Court lacks personal jurisdiction over MCI, the Court will grant MCI's motion and will dismiss this case without prejudice.

## I. BACKGROUND

ECPI operates private, for-profit undergraduate and graduate educational institutes. Based in Virginia Beach, Virginia, ECPI has nineteen campuses in Virginia, North Carolina, South Carolina, and Florida. It also offers online courses in various subjects. On January 21, 2003, ECPI's predecessor gained ownership over the federal trademark "Medical Careers Institute." In 2008, its predecessor assigned its entire interest in the mark to ECPI.

ECPI uses its mark nationwide to market the services claimed in the ECPI mark's registration. ECPI has spent considerable time, money, and resources to develop, promote, and offer those services. As a result, ECPI's mark "has come to signify the high quality of the educational, training, career planning, and employment services designated by the [m]ark, and acquired incalculable distinction, reputation, and goodwill belonging exclusively to [ECPI]." (Compl. ¶ 12.)

Founded in 2006, MCI, a New Jersey corporation, offers the same health education services as those identified in the registration for ECPI's mark. MCI's mark differs from ECPI's mark in one respect—it omits the "s" after "Career." In 2006, MCI registered and used the internet domain names medicalcareerinstitute.net and medicalcareerinstitute.com to advertise and promote goods and services identical to those offered by ECPI. In 2014, MCI began using the internet domain name mcinj.edu to advertise and promote its health education services. MCI also uses its mark on social media and in online advertising. ECPI alleges that MCI targets the same consumers as those to which ECPI markets its health education services, causing consumer confusion. ECPI also alleges that MCI targets those consumers through its websites and social media accounts.

According to MCI, MCI does not do business in Virginia, has not received requests for information from Virginia residents, does not have any teachers or students who are Virginia citizens, and has no other contacts with Virginia. MCI has a single office, located in New Jersey. MCI's six employees are New Jersey residents who work out of MCI's New Jersey office.

In July, 2011, MCI received an accreditation from the Accrediting Bureau of Health Education Schools ("ABHES"), a Virginia corporation, after a consulting firm recommended that

MCI pursue an ABHES accreditation.[1] The consulting firm guided MCI through that process. ABHES conducts business, such as on-site visits and workshops, outside of Virginia. MCI personnel have not visited the ABHES office, and they have not negotiated or signed a contract with ABHES in Virginia. Pursuant to ABHES' requirements, MCI mails an annual report and its "annual sustaining fee" to ABHES' Virginia address once a year. (Dk. No. 13-1, ¶ 8.)

In November, 2018, ECPI sent MCI a cease and desist letter, objecting to MCI's use of MCI's mark. MCI did not stop using its mark in connection with its health education services.

On April 30, 2019, ECPI filed this action against MCI, alleging (1) trademark infringement, 15 U.S.C. § 1114(1); (2) false designation of origin, 15 U.S.C. § 1125(a); (3) trademark dilution, 15 U.S.C. § 1125(c); and (4) cybersquatting, § 15 U.S.C. 1125(d). MCI has moved to dismiss the case for lack of personal jurisdiction or improper venue, or alternatively, to transfer this action to the District of New Jersey. ECPI opposes the motion but requests leave to amend its complaint and to conduct jurisdictional discovery in the event that the Court concludes that it lacks personal jurisdiction.

---

[1] ECPI never mentioned ABHES or MCI's accreditation in its complaint, yet argues that MCI's ABHES accreditation confers jurisdiction over MCI. MCI has clarified the facts regarding its accreditation in an affidavit attached to its reply brief.

## II. DISCUSSION

### *A. Personal Jurisdiction*[2]

A court may exercise personal jurisdiction over a non-resident defendant if the defendant has certain minimum contacts with the forum and the suit does not offend "traditional notions of fair play and substantial justice." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Resolving a non-resident defendant's challenge to personal jurisdiction requires a two-step inquiry. *ESAB Group v. Centricut*, 126 F.3d 617, 622 (4th Cir. 1997). The Court must first determine whether Virginia's long-arm statute authorizes jurisdiction over the defendants. *Id.* The Court must then determine whether due process forbids the exercise of jurisdiction. *Id.* Virginia's "long-arm statute extends personal jurisdiction to the outer bounds of due process, [so] the two-prong test collapses into a single inquiry when Virginia is the forum state." *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012).

A non-resident defendant may be subject to either specific or general jurisdiction. For a court to exercise general jurisdiction, the defendant must have "continuous and systemic" contacts with the forum state. *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016). Courts exercise specific jurisdiction when the defendant has "purposefully established minimum contacts" with the forum state such that the defendant "should reasonably anticipate being haled

---

[2] A Rule 12(b)(2) motion challenges a court's exercise of personal jurisdiction over a defendant. The plaintiff bears the burden of demonstrating jurisdiction. *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). When courts address a challenge to personal jurisdiction by reviewing the complaint and the parties' motions, accompanying affidavits, and supporting memoranda, the plaintiff must make a prima facie showing of personal jurisdiction to survive the challenge. *Id.* at 268. "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

into court there." *Id.* Importantly, for specific jurisdiction to arise, the controversy must result from the defendant's contact with the forum state. *See id.*

Because ECPI argues that the Court has both specific and general jurisdiction over MCI, the Court will consider each in turn.

### *1. Specific Jurisdiction*

To determine whether the Court can exercise specific personal jurisdiction, it examines whether (1) the defendant "purposefully availed itself of the privilege of conducting activities" in Virginia, (2) the plaintiff's claim arose out of the activities directed at Virginia, and (3) the exercise of personal jurisdiction would be constitutionally reasonable. *Perdue Foods LLC*, 814 F.3d at 189. "The plaintiff must prevail on each prong." *Id.*

A party, however, cannot "seek to base jurisdiction on one, isolated occurrence and whatever inferences can be drawn therefrom" when that occurrence arises from "fortuitous circumstance[s]." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). A defendant's relationship with a third party alone does not confer specific jurisdiction over a non-state defendant. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017). Instead, to give rise to specific jurisdiction, the suit must arise out of the defendant's contact with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Suits arise out of the defendant's contact with a forum state when "there is an affiliation between the forum and the underlying controversy." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780. Put another way, when the defendant conducts activities directed at the forum state, and the litigation results from injuries arising from those activities, the Court has specific jurisdiction over the defendant. *Long v. Chevron Corp.*, Civil Action No. 4:11cv47, 2011 WL 3903066, at *13 (E.D. Va. Sept. 2, 2011).

Here, ECPI argues that the Court has specific jurisdiction over MCI because MCI received a voluntary accreditation from ABHES, a Virginia corporation.[3] ECPI makes various arguments about why MCI's contacts with ABHES give rise to specific jurisdiction, including MCI's payment of fees, ABHES' on-site visits, and the practical benefit the accreditation has on MCI. These arguments, however, conflate the specific jurisdiction analysis with the general jurisdiction analysis. ABHES' accreditation bears no relationship to the alleged conduct, so it does not give rise to specific jurisdiction.

To the extent that ECPI argues MCI's use of the infringing mark in its accreditation application with ABHES led to the consumer confusion, and thus, to specific jurisdiction, that argument also fails. To prevail on a trademark infringement or false designation of origin claim, the trademark holder must show

> (1) that it possesses a mark; (2) that the [opposing party] used the mark; (3) that the [opposing party's] use of the mark occurred in commerce; (4) that the [opposing party] used the mark in connection with the sale, offering for sale, distribution, or advertising of goods or services; and (5) that the [opposing party] used the mark in a manner likely to confuse consumers.

*Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005) (alterations in original) (quotations omitted). A court must consider "whether there exists a 'likelihood that an appreciable number of ordinarily prudent *purchasers* will be misled, or indeed simply confused, as to the source of the

---

[3] MCI initially argued that its internet activity does not give rise to specific jurisdiction, and ECPI did not seriously dispute that argument. Courts use a sliding scale test to determine whether a defendant's internet contacts give rise to jurisdiction in a state. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 399 (4th Cir. 2003). A company must do more than "merely place information on the Internet." *Id.* at 400. The company must direct the internet activity at Virginia with the intent of engaging in "business or other interactions" within Virginia, and cause injury that gives rise to a potential claim cognizable in Virginia. *Id.* at 399. MCI maintained a passive website and did not act with the manifest intent of targeting Virginians through its internet conduct. Thus, MCI's website and social media presence do not give rise to specific jurisdiction.

goods in question.'" *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 127 (4th Cir. 1990) (quoting *Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 213 (2d Cir. 1985)) (emphasis added).

ABHES has not purchased goods or services from ECPI, and MCI did not use the mark in connection with a sale, distribution, or advertisement of goods or services with ABHES. ECPI's claims simply do not arise out of the accreditation MCI received from ABHES. Thus, the Court lacks specific jurisdiction over MCI.

## 2. General Jurisdiction

When a "suit does not arise out of the defendant's activities in the forum state, the court must exercise general jurisdiction and the requisite minimum contacts between the defendant and the forum state are fairly extensive." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). Courts exercise general jurisdiction "when [the defendant's] affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted).

ECPI argues that, at a minimum, the ABHES accreditation confers general jurisdiction over MCI. Essentially, ECPI contends that MCI's relationship with ABHES establishes a "significant and continuous" business relationship in Virginia. (Dk. No. 9, at 11.)

MCI, however, filed an affidavit clarifying its association and contacts with ABHES. MCI originally sought accreditation from ABHES because of a recommendation by a consultant, not because of ABHES' operations in Virginia. MCI has never visited ABHES' Virginia office. At most, MCI has annual contact with ABHES when it mails its annual report and sustaining fee. That does not amount to "fairly extensive" contacts necessary to give rise to general jurisdiction. *See Nichols*, 991 F.2d at 1198-1200. Thus, MCI does not have a continuous or systematic

7

affiliation with Virginia necessary for the Court to exercise general jurisdiction over MCI. *See Goodyear Dunlop Tires Operations, S.A*, 564 U.S. at 919.

### *B. Jurisdictional Discovery*

If the Court grants the motion to dismiss, the plaintiff requests leave to amend and to conduct jurisdictional discovery. A court has broad discretion to grant jurisdictional discovery. *See Carefirst of Md.*, 334 F.3d at 402. For example, a court may decline to grant jurisdictional discovery when a plaintiff "offers only speculation or conclusory assertions about contacts with a forum state," *see id.*, "the pleadings contain no specific facts that could establish the requisite contacts" with the forum state, *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993), or "significant gaps in the record exist[] regarding [the] defendant's traditional . . . and . . . Internet-based contacts." *Weinstein v. Todd Marine Enters.*, 115 F. Supp. 2d 668, 676 (E.D. Va. 2000) (quotations omitted).

ECPI points to one connection between MCI and Virginia to establish jurisdiction: MCI's accreditation with ABHES. ECPI, however, has failed to provide more than hypothetical or speculative allegations about the nature of that business relationship. Instead, MCI has established that it has limited contact with ABHES that does not give rise to either general or specific jurisdiction and that it does not have any other contacts with Virginia. Even drawing all reasonable inferences in favor of ECPI, MCI has left no specific gaps in the record regarding the nature of its connections with Virginia. Accordingly, the Court will deny ECPI's request for jurisdictional discovery and will not allow ECPI to amend its complaint.

### III. CONCLUSION

For the foregoing reasons, the Court will grant the defendant's motion to dismiss and will dismiss the case without prejudice for lack of personal jurisdiction. Because the Court lacks

personal jurisdiction over MCI, the Court does not consider the parties' arguments regarding improper venue or MCI's request to transfer the case. The Court declines to grant ECPI leave to amend or conduct jurisdictional discovery.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Order to all counsel of record.

Date: 29 January 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge